# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Norman E. Davis et al.

v.

Relocation Properties
Management, L.L.C.

August 22, 2000

Case No. CL00-46

BY JUDGE WILLIAM H. LEDBETTER, JR.

The purchaser in a residential real estate transaction seeks compensation from the seller for wood infestation damage, asserting three theories: the Virginia Residential Property Disclosure Act, the Virginia Consumer Protection Act, and breach of contract. The seller has demurred, contending that the contract refutes the plaintiff's claim under all three theories of recovery.

*Facts*

The plaintiffs (collectively, purchaser or Davis) and the defendant (seller or RPM) entered into a contract dated December 27, 1998, in which Davis agreed to purchase and RPM agreed to sell a residence at 5755 Stanfield Road in Spotsylvania County for $92,000.00. The parties went to settlement on February 12, 1999.

Shortly after Davis occupied the property, insect infestation was discovered. Further investigation revealed that the property was "thoroughly infested with active termites" and that "substantial structural and other damage" existed. According to the motion for judgment, the nature and extent of the damage indicate that the problem existed when the parties entered into the contract.

Pertinent here, the contract addresses wood infestation and damages in several particulars.

Paragraph 3 of the contract provides that the purchaser accepts the property in "AS IS" condition as of the date of the contract, except as otherwise provided in the contract.

In paragraph 13, the seller warrants that the dwelling is "free of visible termites and other wood-destroying insects" and "free from visible insect damage." The seller agreed to provide a written report from a pest control firm acceptable to the purchaser's lender and to pay cost of any "extermination and repairs."

Again, in paragraph 26A, the contract provides that the property is sold in "AS IS" condition (except as provided in paragraph 3).

Paragraphs 3, 13, and 26A are pre-printed clauses. Paragraph 30 states that typewritten or handwritten provisions of the contract "shall control all pre-printed provisions that are in conflict."

Paragraph 31 is labelled "Additions." It states: "The following are made a part of this contract." In a blank space, the following handwritten language appears: "[RPM] is a non-resident owner and has no knowledge as to the condition of this property except for inspections/reports given to listing agent."

Similarly, paragraph 32, labelled "Other Terms," contains the following handwritten provision: "Purchaser is buying property in as is condition."

When Davis notified RPM of the discovery of infestation damage, RPM refused to correct it. Consequently, Davis initiated this litigation by motion for judgment on February 10, 2000. RPM filed a demurrer. The court heard arguments on the demurrer on August 7, 2000.

### General Contract Law Principles

In the interpretation and construction of contracts, Virginia adheres to the plain meaning rule, that is, it is the duty of the court to construe contracts as they were made by the parties and to give full effect to the language they used, when that language is plain, clear, and unambiguous. *Marriott Corp. v. Combined Properties, Ltd.*, 239 Va. 506, 391 S.E.2d 313 (1990); see generally, 4A M.J., *Contracts*, § 40 *et seq.*

Language used in a contract is to be given its ordinary meaning unless it appears from the context that a different, or more technical, meaning was intended. *Virginian Ry. v. Hood*, 152 Va. 254, 146 S.E. 284 (1929). Generally, courts must conclude that the parties intended what the written

instrument plainly declared. *Lenders Finance Corp. v. Talton*, 249 Va. 182, 455 S.E.2d 232 (1995).

Here, the parties plainly declared, in blank spaces of a pre-printed contract reserved just for such purpose, that RPM, as a non-resident owner of the property, had no knowledge of the condition of the property except what was reported by professional inspectors, and for that reason the property was being sold in "as is" condition. The parties also agreed that handwritten provisions, such as those described, control conflicting pre-printed clauses.

It follows that the handwritten provisions of paragraphs 31 and 32 effectively override, or "control," the conflicting pre-printed warranty regarding termite infestation and damage in paragraph 13. To construe the contract otherwise would ignore the plain and clear language of paragraphs 30, 31, and 32 of the contract.

Further, the language, taken as a whole, is sensible and reasonable. When parties use a pre-printed instrument, it is helpful that they can modify, even contradict, the "boiler plate" with specific handwritten provisions added in spaces provided for that purpose in the instrument itself. In this case, the parties took advantage of that opportunity. In clear and unequivocal words, the seller explained that it was a "non-resident owner," that it was not familiar with the condition of the property, and that it could only rely on the inspections and reports of others regarding the condition of the home. For that reason, the purchaser agreed to buy the property "as is."

There is no allegation in the purchasers' pleading that the contract is the result of fraud, coercion, or mistake or that the purchaser is incompetent.

Therefore, the court is of the opinion that the parties validly contracted that the property was sold in "as is" condition.

### Residential Property Disclosure Act

The Residential Property Disclosure Act (Virginia Code § 55-517 *et seq.*), enacted in 1992, requires the seller of residential real estate to provide the purchaser either (1) a disclaimer statement stating that the owner makes no representations or warranties as to the condition of the property and that the purchaser will be receiving it "as is," except as otherwise provided in the contract or (2) a disclosure statement disclosing the owner's knowledge of various physical conditions such as roof, foundation, plumbing, hazardous materials, etc., Virginia Code § 55-519.

According to the Act, the disclaimer or disclosure must be made before the purchaser accepts the contract. Forms are provided by the Virginia Real Estate Board for use in residential sales. The disclaimer or disclosure may be

included in the real estate contract itself, in an addendum to it, or in a separate document. Virginia Code § 55-520(A).

Also, the Act provides that the seller is deemed to have complied with the Act, with respect to that item of information if the seller delivers a report or opinion prepared by a licensed wood-destroying insect control expert. Virginia Code § 55-521.

Here, the seller provided an infestation inspection report to the purchaser. (A copy of it is attached to the motion for judgment.) The report, precise and succinct, states: "Clear. No visible evidence of infestation was observed at the time of inspection." The inspection was conducted on January 26, 1999. With the delivery of that report, prepared by an expert, RPM is exonerated under § 55-521(B) and (C).

Further, RPM complied with the Act by making an appropriate disclaimer in the contract itself. The letter and spirit of the Act have been satisfied by the specific handwritten insertions in paragraphs 31 and 32 of the contract.

In summary, the court is of the opinion that RPM provided the required disclaimer under § 55-519. The disclaimer is in the contract itself, as permitted by § 55-520(A). In addition to providing a disclaimer, RPM provided a wood infestation inspection report, which exonerates RPM under § 55-521 "with respect to that item of information," i.e., infestation and related damage.

## Consumer Protection Act

The Consumer Protection Act (VCPA) was enacted in 1977. It prohibits various "fraudulent acts or practices" in connection with consumer transactions and provides relief to aggrieved consumers. The Act contains a listing of thirty-four acts or practices that would constitute a violation. Virginia Code § 59.1-200.

Without specifying which of the acts or practices enumerated in the statute were committed by RPM, Davis claims that RPM's conduct as alleged in paragraphs 1 through 12, 20, and 21 of the motion for judgment "constitutes a violation of the VCPA." The pleading refers to "false promises" and "misrepresentations."

Davis relies on the written contract for these "false promises" and "misrepresentations." For the reasons discussed above, the court concludes there are no false promises or misrepresentations in the contract. The contract plainly and clearly provides that all pre-printed "boiler plate" language is preempted by the handwritten provisions, and the handwritten provisions in paragraphs 31 and 32 plainly, clearly, and unambiguously provide for an "as is" sale because the seller was not familiar with the condition of the property.

Therefore, because there has been no fraudulent or other illegal act or practice, there can be no action under VCPA.

## Breach of Contract

The third count of the motion for judgment seeks recovery for breach of the contract — specifically, the warranty contained in paragraph 13 ("Termite Inspection").

As discussed above, the warranty in paragraph 13, a pre-printed provision, is overridden, or preempted, by the handwritten language in paragraphs 31 and 32. It follows that there is no warranty upon which the claim can be based.

## Conclusion

Because of the plain, clear, and unambiguous language of the parties' written contract, Davis cannot recover under any of the three theories advanced in the motion for judgment, even assuming, as the court must, that all the allegations in that pleading, as well as all fair inferences that can be drawn from them, are true. The contract, attached to the pleading, speaks for itself and must be given force and effect.

The demurrer is sustained, with leave for Davis to file amended pleadings, if advisable, within twenty-one days of the court's order.